**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| XERIS PHARMACEUTICALS INC., AND STRONGBRIDGE DUBLIN LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>SOMERSET THERAPEUTICS, LLC, SOMERSET PHARMA, LLC, SOMERSET THERAPEUTICS PRIVATE LIMITED A/K/A SOMERSET THERAPEUTICS LIMITED, ODIN PHARMACEUTICALS, LLC, TORRENT PHARMA INC. AND TORRENT PHARMACEUTICALS LIMITED.<br><br>Defendants | Civil Action No. 26-2044 |

**DEFENDANTS TORRENT PHARMA INC. AND TORRENT PHARMACEUTICALS LIMITED'S ANSWER TO COMPLAINT**

Defendants Torrent Pharma Inc. and Torrent Pharmaceuticals Limited (collectively, the "Torrent Defendants"), by and through their undersigned attorneys, provide the following answers to the Complaint of Plaintiffs Xeris Pharmaceuticals, Inc. ("Xeris") and Strongbridge Dublin Limited's ("Strongbridge") (collectively, "Plaintiffs"). This pleading is based upon the Torrent Defendants' knowledge as to their own activities, and upon information and belief as to the activities of others.

Pursuant to Fed. R. Civ. P. 8(b)(3), the Torrent Defendants deny all allegations in Plaintiffs' Complaint, except for those specifically admitted below.

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and in particular under 35 U.S.C. § 271(e)(2). This action arises from the Somerset Defendants' and the Torrent Defendants' submissions of Abbreviated New Drug Applications ("ANDAs") to the U.S. Food and Drug Administration ("FDA") seeking approval to manufacture, market, and sell generic versions of Plaintiffs' highly successful pharmaceutical product, RECORLEV®, prior to the expiration of Plaintiffs' U.S. Patent Nos. 11,020,393 (the "'393 Patent"); 11,278,547 (the "'547 Patent"); 11,903,940 (the "'940 Patent"); and 12,377,096 (the "'096 Patent") (collectively, the "Asserted Patents").

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that Plaintiffs' Complaint states that this is a civil action for patent infringement of the Asserted Patents arising under the patent laws of the United States. The Torrent Defendants deny that Plaintiffs are entitled to any relief, including but not limited to the pled injunction or monetary relief. The Torrent Defendants deny the remaining allegations in paragraph 1.

**RECORLEV®**

2. RECORLEV® (levoketoconazole) is a groundbreaking oral cortisol synthesis inhibitor that represents an important therapeutic advance for the treatment of endogenous hypercortisolemia in adult patients with Cushing's syndrome for whom surgery is not an option or has not been curative.

**ANSWER:**

The Torrent Defendants admit that RECORLEV® (levoketoconazole) is a cortisol synthesis inhibitor indicated for the treatment of endogenous hypercortisolemia in adult patients with Cushing's syndrome for whom surgery is not an option or has not been curative. The Torrent Defendants deny the remaining allegations in paragraph 2.

3. Cushing's syndrome is a rare and serious endocrine disorder caused by chronic elevated cortisol exposure. The disease's multisystem complications are potentially life-threatening, including metabolic changes, high blood pressure, tissue fragility, and psychological disturbances. Normalization of cortisol levels is the first and most important clinical objective in treating the disease.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

4. RECORLEV® was developed through the innovative work of scientists at Strongbridge Biopharma plc (then known as Cortendo AB) who recognized the need for a targeted cortisol synthesis inhibitor. Strongbridge scientists discovered that levoketoconazole, the 2S,4R enantiomer of ketoconazole (chemical name: 2S,4R cis-1-acetyl-4-[4-[[2-(2,4-dichlorophenyl)-2-(1H-imidazol-1-ylmethyl)-1,3-dioxolan-4-yl] methoxyl]phenyl] piperazine), potently inhibits key enzymes involved in cortisol biosynthesis. This inventive insight led to the development of RECORLEV® as a purified, single-enantiomer drug specifically optimized for treating Cushing's syndrome. By targeting cortisol synthesis directly, RECORLEV® addresses the underlying pathophysiology of the disease—the first drug to do so.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

5. In October 2021, Xeris Pharmaceuticals, Inc. acquired Strongbridge Biopharma plc, thereby acquiring RECORLEV® and all associated intellectual property rights, including the Asserted Patents. Through this acquisition, Plaintiffs assumed and continued Strongbridge's legacy of research in unique therapies for overlooked patient populations that have critical impacts on people's lives.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

6. On December 30, 2021, FDA approved New Drug Application ("NDA") No. 214133 for RECORLEV®. FDA granted RECORLEV® orphan drug exclusivity, recognizing the critical unmet medical need for effective therapies for patients with Cushing's syndrome. Xeris markets RECORLEV® (levoketoconazole) in the United States pursuant to the RECORLEV® NDA and Plaintiffs continue to invest in its clinical development.

**ANSWER:**

The Torrent Defendants admit that the FDA's website indicates that the FDA approved New Drug Application ("NDA") No. 214133 for RECORLEV® on December 30, 2021. The Torrent Defendants admit that the FDA's website indicates that RECORLEV® has an orphan drug designation. The Torrent Defendants deny the remaining allegations of paragraph 6.

## PARTIES

7. Plaintiff Xeris is a corporation organized and existing under the laws of the State of Delaware, with its corporate offices and principal place of business at 1375 W. Fulton St., Suite 1300, Chicago, Illinois 60607. Xeris discovers, develops, manufactures, and markets innovative products to improve patient lives.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

8. Xeris is the assignee and owner of the Asserted Patents.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

9. Plaintiff Strongbridge is a private limited company organized and existing under the laws of Ireland, with a principal place of business at 25-28 North Wall Quay, Dublin 1, Ireland.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

10. Strongbridge is the exclusive licensee of the Asserted Patents and holds NDA No. 214133 for RECORLEV®.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

*Somerset*

11. On information and belief, Defendant Somerset Therapeutics, LLC ("Somerset Therapeutics") is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873. On information and belief, Somerset Therapeutics holds (or will hold) any intellectual property rights and marketing authorizations for the Somerset Defendants' generic levoketoconazole oral tablets.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

12. On information and belief, Defendant Somerset Pharma, LLC ("Somerset Pharma") is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873. On information and belief, Somerset Pharma is a wholly owned subsidiary of Somerset Therapeutics. On information and belief, Somerset Pharma is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market, including in this judicial district.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

13. On information and belief, Defendant Somerset Therapeutics Private Limited f/k/a Somerset Therapeutics Limited ("Somerset Limited") is a corporation organized and existing under the laws of India, having a corporate headquarters at 54/1, Budihal, Nelamangala, Bengaluru 562 123, Karnataka, India. On information and belief, Somerset Limited plays a crucial role in the production and supply of the Somerset Defendants' generic drug products.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

14. On information and belief, Defendant Odin Pharmaceuticals, LLC ("Odin") is limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873. On further information and belief, Odin operates as a research and development facility that supports all research and development efforts undertaken by the Somerset Defendants with respect to their generic drug products.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

15. On information and belief, Somerset Therapeutics, Somerset Pharma, Somerset Limited, and Odin collaborate with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic drug products for sale in the United States, including in New Jersey. On further information and belief, Somerset Therapeutics, Somerset Pharma, Somerset Limited, and Odin are agents of one another and/or operate in concert as integrated parts of the same business group, and enter into agreements with each other that are nearer than arm's length.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

16. On information and belief, the Somerset Defendants are in the business of, among other things, developing, manufacturing, obtaining regulatory approval, marketing, selling, importing, and distributing generic copies of branded pharmaceutical products, throughout the United States, including in New Jersey.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

17. On information and belief, Somerset Therapeutics, in collaboration with the other Somerset Defendants, caused ANDA No. 221137 to be submitted to FDA and seeks FDA approval of ANDA No. 221137.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

18. On information and belief, the Somerset Defendants acted collaboratively in preparing and submitting ANDA No. 221137 and continue to act collaboratively in pursuing FDA approval of ANDA No. 221137 and seeking to market the Somerset ANDA Product (defined below) in the United States, including in the State of New Jersey.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

19. On information and belief, the Somerset Defendants intend to commercially manufacture, market, offer for sale, and sell the Somerset ANDA Product throughout the United States, including in the State of New Jersey, in the event FDA approves ANDA No. 221137.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

20. On information and belief, the Somerset Defendants rely on material assistance from one another to market, distribute, offer for sale, and/or sell generic drugs in the U.S. market, including in the State of New Jersey. On information and belief, the Somerset Defendants intend to act collaboratively to commercially manufacture, market, distribute, offer for sale, and/or sell the Somerset ANDA Product, in the event FDA approves ANDA No. 221137.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

*Torrent*

21. On information and belief, Defendant Torrent Pharma Inc. ("Torrent Pharma") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 106 Allen Road, Basking Ridge, New Jersey 07920. On information and belief, Torrent Pharma is a wholly owned subsidiary of Defendant Torrent Pharmaceuticals Limited.

**ANSWER:**

Admitted.

22. On information and belief, Defendant Torrent Pharmaceuticals Limited ("Torrent Limited") is a corporation organized and existing under the laws of India, having a corporate headquarters at Avirat, Thaltej Shilaj Road, Ahmedabad, 380059, Gujarat, India. On information and belief, Torrent Limited plays a crucial role in the production and supply of the Torrent Defendants' generic drug products.

**ANSWER:**

Admitted.

23. On information and belief, the Torrent Defendants are in the business of, among other things, developing, manufacturing, obtaining regulatory approval, marketing, selling, importing, and distributing generic copies of branded pharmaceutical products, throughout the United States, including in New Jersey.

**ANSWER:**

The Torrent Defendants admit that they are in the business of developing, manufacturing, obtaining regulatory approval, marketing, selling, importing, and distributing generic pharmaceutical products throughout the United States. The Torrent Defendants deny the remaining allegations of paragraph 23.

24. On information and belief, Torrent Limited, in collaboration with Torrent Pharma, caused ANDA No. 220357 to be submitted to FDA and seeks FDA approval of ANDA No. 220357.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that the Torrent Defendants submitted ANDA No. 220357 to the FDA, seeking FDA approval. The Torrent Defendants deny the remaining allegations of paragraph 24.

25. On information and belief, the Torrent Defendants acted collaboratively in preparing and submitting ANDA No. 220357 and continue to act collaboratively in pursuing FDA approval of ANDA No. 220357 and seeking to market the Torrent ANDA Product (defined below).

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that Torrent Pharma is a wholly owned subsidiary of Torrent Pharmaceuticals Limited. The Torrent Defendants deny the remaining allegations of paragraph 25.

26. On information and belief, the Torrent Defendants intend to commercially manufacture, market, offer for sale, and sell the Torrent ANDA Product throughout the United States, including in the State of New Jersey, in the event FDA approves ANDA No. 220357.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, market, offer for sale, and sell the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 26.

27. On information and belief, the Torrent Defendants rely on material assistance from one another to market, distribute, offer for sale, and/or sell generic drugs in the U.S. market, including in the State of New Jersey. On information and belief, the Torrent Defendants intend to act collaboratively to commercially manufacture, market, distribute, offer for sale, and/or sell the Torrent ANDA Product, in the event FDA approves ANDA No. 220357.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that Torrent Pharma is a wholly owned subsidiary of Torrent Pharmaceuticals Limited. The Torrent Defendants deny the remaining allegations of paragraph 27.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that this Court has subject matter jurisdiction solely for the limited purposes of this particular action.

*Somerset*

29. This Court has personal jurisdiction over Somerset Therapeutics because Somerset Therapeutics has its principal place of business in New Jersey and has registered to do business with the State of New Jersey's Division of Revenue and Enterprise Services as a business operating in New Jersey under Business ID No. 0451084958. Somerset Therapeutics has thus consented to personal jurisdiction in New Jersey.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

30. This Court has personal jurisdiction over Somerset Pharma because Somerset Pharma has its principal place of business in New Jersey and has registered to do business with the State of New Jersey's Division of Revenue and Enterprise Services as a business operating in New Jersey under Business ID No. 0450400310. Somerset Pharma has thus consented to personal jurisdiction in New Jersey.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

31. This Court has personal jurisdiction over Somerset Limited because, *inter alia*, on information and belief, Somerset Limited has continuous and systematic contacts with the State of New Jersey, regularly conducts business in the State of New Jersey, either directly or through one or more of its wholly owned subsidiaries, agents, and/or

alter egos, has purposefully availed itself of the privilege of doing business in the State of New Jersey, and intends to sell the Somerset ANDA Product in the State of New Jersey upon approval of ANDA No. 221137. In the alternative, this Court has personal jurisdiction over Somerset Limited in the State of New Jersey under Federal Rule of Civil Procedure 4(k)(2) because Somerset Limited is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction over it is consistent with the United States Constitution and laws.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

32. This Court has personal jurisdiction over Odin because Odin has its principal place of business in New Jersey and has registered to do business with the State of New Jersey's Division of Revenue and Enterprise Services as a business operating in New Jersey under Business ID No. 0450315269. Odin has thus consented to personal jurisdiction in New Jersey.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

33. On information and belief, the Somerset Defendants are in the business of manufacturing, marketing, importing, distributing, and selling pharmaceutical drug products, including generic drug products, either directly or through subsidiaries, agents, and/or alter egos, which the Somerset Defendants manufacture, distribute, market, and/or sell throughout the United States and in this judicial district.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

34. On information and belief, the Somerset Defendants are licensed to sell generic and proprietary pharmaceutical products in the State of New Jersey, either directly or through one or more of their wholly owned subsidiaries, agents, and/or alter egos.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

35. The Somerset Defendants have committed, or aided, abetted, contributed to, and/or participated in the commission of, acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture and market RECORLEV® for sale and use throughout the United States, including in this judicial district. On information and belief and as indicated by a letter dated February 6, 2026, sent by Somerset Therapeutics to Plaintiffs pursuant to 21 U.S.C. § 355(j)(2)(B), the Somerset Defendants prepared and filed Somerset's ANDA with the intention of seeking to market the Somerset ANDA Product nationwide, including within this judicial district.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

36. On information and belief, the Somerset Defendants plan to sell the Somerset ANDA Product in the State of New Jersey, list the Somerset ANDA Product on the State of New Jersey's prescription drug formulary, and seek Medicaid reimbursements for sales of the Somerset ANDA Product in the State of New Jersey, either directly or through one or more of its wholly owned subsidiaries, agents, and/or alter egos.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

37. On information and belief, the Somerset Defendants derive substantial revenue from the marketing, manufacture, and/or sale of generic pharmaceutical products in the United States and in the State of New Jersey.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

38. On information and belief, the Somerset Defendants know and intend that the Somerset ANDA Product will be distributed and sold in the State of New Jersey and will thereby displace sales of RECORLEV®, causing injury to Plaintiffs. The Somerset Defendants intend to take advantage of their established channels of distribution in the State of New Jersey for the sale of the Somerset ANDA Product.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

39. On information and belief, Somerset Therapeutics, with the aid of Somerset Pharma, Somerset Limited, and Odin, filed the ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Somerset Defendants' generic levoketoconazole oral tablets in the United States, including in the State of New Jersey.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

40. On information and belief, Somerset Therapeutics, Somerset Pharma, and Odin regularly invoke the jurisdiction of the courts of this judicial district by pleading claims and counterclaims in pharmaceutical patent infringement actions in this District. *See, e.g.*, *American Regent, Inc. v. Somerset Therapeutics, LLC et. al.*, C.A. No. 24-1022, ECF No. 12 (D.N.J. Apr. 1, 2024); *In re Selenious Acid Litigation*, C.A. No. 24-7791,

ECF No. 73 (D.N.J. Jan. 9, 2025). On further information and belief, Somerset Therapeutics, Somerset Pharma, and Odin have also not contested personal jurisdiction or venue in pharmaceutical patent litigation in this judicial district.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

41. For at least the above reasons, it would not be unfair or unreasonable for the Somerset Defendants to litigate this action in this District, and the Somerset Defendants are subject to personal jurisdiction in this District.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

42. Venue is proper in this District under 28 U.S.C. §§ 1391(c) and (d), and 1400(b).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

43. Venue is proper at least because on information and belief, the Somerset Defendants submitted ANDA No. 221137 from their Somerset, New Jersey place of business and therefore the Somerset Defendants have committed acts of infringement and have a regular and established place of business in New Jersey for the purposes of venue.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

44. Venue is proper against Somerset Therapeutics, Somerset Pharma, and Odin because, *inter alia*, they maintain a regular and established place of business in this District and have committed an act of infringement in this District.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

45. Venue is proper against Somerset Limited, a foreign corporation, in any judicial district that has personal jurisdiction, including this District.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

*Torrent*

46. This Court has personal jurisdiction over Torrent Pharma because Torrent Pharma has its principal place of business in New Jersey and has registered to do business with the State of New Jersey's Division of Revenue and Enterprise Services as a business operating in New Jersey under Business ID No. 0400474439. Torrent Pharma has thus consented to personal jurisdiction in New Jersey.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest personal

jurisdiction solely for the limited purposes of this particular action. The Torrent Defendants deny the remaining allegations of paragraph 46.

47. This Court has personal jurisdiction over Torrent Limited because, *inter alia*, on information and belief, Torrent Limited has continuous and systematic contacts with the State of New Jersey, regularly conducts business in the State of New Jersey, either directly or through one or more of its wholly owned subsidiaries, agents, and/or alter egos, has purposefully availed itself of the privilege of doing business in the State of New Jersey, and intends to sell the Torrent ANDA Product in the State of New Jersey upon approval of ANDA No. 220357.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest personal jurisdiction solely for the limited purposes of this particular action. The Torrent Defendants deny the remaining allegations of paragraph 47.

48. In the alternative, this Court has personal jurisdiction over Torrent Limited in the State of New Jersey under Federal Rule of Civil Procedure 4(k)(2) because Torrent Limited is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction over it is consistent with the United States Constitution and laws.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest personal jurisdiction solely for the limited purposes of this particular action. The Torrent Defendants deny the remaining allegations of paragraph 48.

49. On information and belief, the Torrent Defendants are in the business of manufacturing, marketing, importing, distributing, and selling pharmaceutical drug products, including generic drug products, either directly or through subsidiaries, agents, and/or alter egos, which the Torrent Defendants manufacture, distribute, market, and/or sell throughout the United States and in this judicial district.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest personal jurisdiction solely for the limited purposes of this particular action. The Torrent Defendants deny the remaining allegations of paragraph 49.

50. On information and belief, the Torrent Defendants are licensed to sell generic and proprietary pharmaceutical products in the State of New Jersey, either directly or through one or more of their wholly owned subsidiaries, agents, and/or alter egos.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that the Torrent Defendants, either directly or through one or more of its wholly-owned subsidiaries, agents, and/or alter egos, develops, manufactures, markets, distributes, sells, and/or imports generic versions of branded pharmaceutical products in the United States. The Torrent Defendants deny the remaining allegations of paragraph 50.

51. The Torrent Defendants have committed, or aided, abetted, contributed to, and/or participated in the commission of, acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture and market RECORLEV® for sale and use throughout the United States, including in this judicial district. On information and belief and as indicated by a letter dated February 10, 2026,

sent by Torrent Limited to Plaintiffs pursuant to 21 U.S.C. § 355(j)(2)(B), the Torrent Defendants prepared and filed Torrent's ANDA with the intention of seeking to market the Torrent ANDA Product nationwide, including within this judicial district.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit they intend to market the Torrent ANDA Product throughout the United States, in the event the FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 51.

52. On information and belief, the Torrent Defendants plan to sell the Torrent ANDA Product in the State of New Jersey, list the Torrent ANDA Product on the State of New Jersey's prescription drug formulary, and seek Medicaid reimbursements for sales of the Torrent ANDA Product in the State of New Jersey, either directly or through one or more of their wholly owned subsidiaries, agents, and/or alter egos.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, Defendants admit they intend to market the Torrent ANDA Product throughout the United States, in the event the FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 52.

53. On information and belief, the Torrent Defendants derive substantial revenue from the marketing, manufacture, and/or sale of generic pharmaceutical products in the United States and in the State of New Jersey.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they are in the business of marketing, manufacturing, and/or sale of generic pharmaceutical products throughout the United States. The Torrent Defendants deny the remaining allegations of paragraph 53.

54. On information and belief, the Torrent Defendants know and intend that the Torrent ANDA Product will be distributed and sold in the State of New Jersey and will thereby displace sales of RECORLEV®, causing injury to Plaintiffs. The Torrent Defendants intend to take advantage of their established channels of distribution in the State of New Jersey for the sale of the Torrent ANDA Product.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, Defendants admit they intend to market the Torrent ANDA Product throughout the United States, in the event the FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 54.

55. On information and belief, Torrent Limited, with the aid of Torrent Pharma, filed the ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Torrent Defendants' generic levoketoconazole oral tablets in the United States, including in the State of New Jersey.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, sale, and/or import the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 55.

56. On information and belief, the Torrent Defendants regularly invoke the jurisdiction of the courts of this judicial district by pleading claims and counterclaims in pharmaceutical patent infringement actions in this district. *See, e.g.*, *Supernus Pharmas., Inc. v. Torrent Pharmas., Ltd, et. al.*, C.A. No. 21-14268, ECF No. 11 (D.N.J. Sept. 29, 2021); *Allergan Sales, LLC v. Torrent Pharmas. Ltd., et al.*, C.A. No. 19-21709, ECF No. 21 (D.N.J. Feb. 20, 2020). On further information and belief, the Torrent Defendants have also not contested personal jurisdiction or venue in pharmaceutical patent litigation in this judicial district.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they did not contest personal jurisdiction solely for the limited purposes of the particular identified actions. The Torrent Defendants deny the remaining allegations of paragraph 56.

57. For at least the above reasons, it would not be unfair or unreasonable for the Torrent Defendants to litigate this action in this District, and the Torrent Defendants are subject to personal jurisdiction in this District.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they do not contest personal jurisdiction solely for the limited purposes of this particular action. The Torrent Defendants deny the remaining allegations of paragraph 57.

58. Venue is proper in this District under 28 U.S.C. §§ 1391(c) and (d), and 1400(b).

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest venue solely for the limited purposes of this particular action.

59. Venue is proper at least because on information and belief, the Torrent Defendants submitted ANDA No. 220357 from their Basking Ridge, New Jersey place of business and therefore the Torrent Defendants have committed acts of infringement and have a regular and established place of business in New Jersey for the purposes of venue.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest venue solely for the limited purposes of this particular action. Defendants deny the remaining allegations of paragraph 59.

60. Venue is proper against Torrent Pharma because, *inter alia*, it maintains a regular and established place of business in this District and has committed an act of infringement in this District.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest venue solely for the limited purposes of this particular action. Defendants deny the remaining allegations of paragraph 60.

61. Venue is proper against Torrent Limited, a foreign corporation, in any judicial district that has personal jurisdiction, including this District.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants do not contest venue solely for the limited purposes of this particular action. The Torrent Defendants deny the remaining allegations of paragraph 61.

## THE ASSERTED PATENTS

62. On June 1, 2021, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '393 Patent entitled "Methods of Treating Disease With Levoketoconazole." A true and correct copy of the '393 Patent is attached as **Exhibit A**. The '393 Patent is listed in the *Approved Drug Products with Therapeutic Equivalence Evaluations* (an FDA publication commonly known as the "Orange Book") for RECORLEV® (levoketoconazole). Plaintiffs own all rights, title, and interest in and to the '393 Patent. There is an actual case or controversy between the parties regarding the Somerset Defendants' liability for their infringement of the '393 Patent.

**ANSWER:**

The Torrent Defendants admit that a purported copy of the ’393 Patent is attached to the Complaint as Exhibit A. The Torrent Defendants admit that, on its face, the ’393 patent is entitled “Methods of Treating Disease with Levoketoconazole” and bears an issue date of June 1, 2021. The Torrent Defendants deny the remaining allegations of paragraph 62.

63. On March 22, 2022, the USPTO duly and legally issued the ’547 Patent entitled “Methods of Treating Disease With Levoketoconazole.” A true and correct copy of the ’547 Patent is attached as **Exhibit B**. The ’547 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole). Plaintiffs own all rights, title, and interest in and to the ’547 Patent. There is an actual case or controversy between the parties regarding the Somerset Defendants’ liability for their infringement of the ’547 Patent.

**ANSWER:**

The Torrent Defendants admit that a purported copy of the ’547 Patent is attached to the Complaint as Exhibit B. The Torrent Defendants admit that, on its face, the ’547 patent is entitled “Methods of Treating Disease with Levoketoconazole” and bears an issue date of March 22, 2022. The Torrent Defendants deny the remaining allegations of paragraph 63.

64. On February 20, 2024, the USPTO duly and legally issued the ’940 Patent entitled “Methods of Treating Disease With Levoketoconazole.” A true and correct copy of the ’940 Patent is attached as **Exhibit C**. The ’940 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole). Plaintiffs own all rights, title, and interest in and to the ’940 Patent. There is an actual case or controversy between the parties regarding the Somerset Defendants’ liability for their infringement of the ’940 Patent.

**ANSWER:**

The Torrent Defendants admit that a purported copy of the ’940 Patent is attached to the Complaint as Exhibit C. The Torrent Defendants admit that, on its face, the ’940 patent is entitled “Methods of Treating Disease with Levoketoconazole” and bears an issue date of February 20, 2024. The Torrent Defendants deny the remaining allegations of paragraph 64.

65. On August 5, 2025, the USPTO duly and legally issued the ’096 Patent entitled “Methods of Treating Disease With Levoketoconazole.” A true and correct copy of the ’096 Patent is attached as **Exhibit D**. The ’096 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole). Plaintiffs own all rights, title, and interest in and to the ’096 Patent. There is an actual case or controversy between the parties regarding the Somerset Defendants’ liability for their infringement of the ’096 Patent.

**ANSWER:**

The Torrent Defendants admit that a purported copy of the ’096 Patent is attached to the Complaint as Exhibit D. The Torrent Defendants admit that, on its face, the ’096 patent is entitled “Methods of Treating Disease with Levoketoconazole” and bears an issue date of August 5, 2025. The Torrent Defendants deny the remaining allegations of paragraph 65.

**SOMERSET’S ANDA NO. 221137**

66. The Somerset Defendants have submitted ANDA No. 221137 (“Somerset’s ANDA”) which seeks approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation into the United States of a purported generic version of RECORLEV® (levoketoconazole) 150 mg tablets (the “Somerset ANDA Product”) prior to the expiration of the Asserted Patents.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

67. On information and belief, FDA has not approved Somerset's ANDA.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

68. Somerset Therapeutics sent Plaintiffs a Notice Letter dated February 6, 2026. Plaintiffs received the Notice Letter on February 9, 2026. Somerset Therapeutics' Notice Letter represented that Somerset Therapeutics had submitted to FDA Somerset's ANDA and a purported Paragraph IV certification with respect to the '393, '547, '940, and '096 Patents, which are listed in the Orange Book for RECORLEV®. Somerset Therapeutics' Notice Letter did not represent that Somerset Therapeutics submitted a Paragraph IV certification for U.S. Patent No. 9,918,984 (the "'984 Patent"), which is listed in the Orange Book for RECORLEV®. Accordingly, on information and belief, Somerset Therapeutics submitted a Paragraph III certification for the '984 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

69. According to applicable regulations, Notice Letters such as Somerset Therapeutics' must contain a detailed statement of the factual and legal basis for the applicant's opinion that the patent is invalid, unenforceable, or not infringed which includes a claim-by-claim analysis, describing "for each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "for each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." *See* 21 C.F.R. § 314.95(c)(7); *see also* 21 C.F.R. § 314.52.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

70. On information and belief, if FDA approves the Somerset's ANDA, the Somerset Defendants will manufacture, offer for sale, or sell the Somerset ANDA Product, within the United States, including within the State of New Jersey, or will import the Somerset ANDA Product into the United States, including the State of New Jersey. The manufacture, use, offer for sale, sale, or importation of the Somerset ANDA Product will directly infringe the Asserted Patents, either literally or under the doctrine of equivalents, and the Somerset Defendants will actively induce and/or contribute to the infringement of those patents.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

71. This action is being brought within forty-five days of Plaintiffs' receipt of Somerset Therapeutics' Notice Letter. Accordingly, Plaintiffs are entitled to a stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii) and 21 U.S.C. § 355(j)(5)(F)(ii) until June 30, 2029, due to RECORLEV®'s New Chemical Entity status.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

72. On information and belief, the Somerset Defendants were aware of the Asserted Patents when they filed Somerset's ANDA with a Paragraph IV Certification.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

73. Levoketoconazole is the active ingredient in the Somerset ANDA Product and the Somerset ANDA Product is levoketoconazole tablets, oral, 150 mg per tablet.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

74. On information and belief, Somerset's ANDA No. refers to and relies upon the RECORLEV® NDA and contains data that, according to the Somerset Defendants, demonstrates bioequivalence of the Somerset ANDA Product and RECORLEV® (levoketoconazole), *see* 21 U.S.C. § 355(j)(2); 21 C.F.R. § 314.94(a)(7), or the Somerset Defendants have sought a waiver of the requirement to demonstrate bioequivalence of the Somerset ANDA Product and RECORLEV® (levoketoconazole).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

75. On information and belief, the Somerset Defendants intend to have healthcare providers use the Somerset ANDA Product, if approved, as set forth in the Somerset ANDA Product label. On information and belief, the Somerset ANDA Product label will instruct healthcare providers to prescribe the Somerset ANDA Product in the manner set forth in the label.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**TORRENT'S ANDA NO. 220357**

76. The Torrent Defendants have submitted ANDA No. 220357 ("Torrent's ANDA") which seeks approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation into the United States of a purported generic version of RECORLEV® (levoketoconazole) 150 mg tablets (the "Torrent ANDA Product") prior to the expiration of the Asserted Patents.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. The Torrent Defendants admit that the Torrent Defendants submitted ANDA No. 220357 to the FDA, seeking FDA approval for the commercial manufacture, use, sale, offer for sale, and/or importation into the United States of a generic version of RECORLEV® (levoketoconazole) 150 mg tablets. The Torrent Defendants deny the remaining allegations of paragraph 76.

77. On information and belief, FDA has not approved Torrent's ANDA.

**ANSWER:**

Admitted.

78. Torrent Limited sent Plaintiffs a Notice Letter dated February 10, 2026. Plaintiffs received the Notice Letter on February 10, 2026. Torrent Limited's Notice Letter represented that Torrent Limited had submitted to FDA Torrents's ANDA and a purported Paragraph IV certification with respect to the '393, '547, '940, and '096 Patents, which are listed in the Orange Book for RECORLEV®. Torrent Limited's

Notice Letter did not represent that Torrent Limited submitted a Paragraph IV certification for U.S. Patent No. 9,918,984 (the "'984 Patent"), which is listed in the Orange Book for RECORLEV®. Accordingly, on information and belief, Torrent Limited submitted a Paragraph III certification for the '984 Patent.

**ANSWER:**

The Torrent Defendants admit that Torrent Pharmaceuticals Limited's Notice Letter speaks for itself as to the contents therein. The Torrent Defendants also admit that Torrent Pharmaceuticals Limited submitted a Paragraph III certification for the '984 Patent. The Torrent Defendants deny the remaining allegations of paragraph 78.

79. According to applicable regulations, Notice Letters such as Torrent Limited's must contain a detailed statement of the factual and legal basis for the applicant's opinion that the patent is invalid, unenforceable, or not infringed which includes a claim-by-claim analysis, describing "for each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "for each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." *See* 21 C.F.R. § 314.95(c)(7); *see also* 21 C.F.R. § 314.52.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that 21 C.F.R. § 314.95(c)(7) states that a paragraph IV certification must include "for each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "for each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." The Torrent Defendants deny the remaining allegations of paragraph 79.

80. On information and belief, if FDA approves Torrent's ANDA, the Torrent Defendants will manufacture, offer for sale, or sell the Torrent ANDA Product, within the United States, including within the State of New Jersey, or will import the Torrent ANDA Product into the United States, including the State of New Jersey. The manufacture, use, offer for sale, sale, or importation of the Torrent ANDA Product will directly infringe the Asserted Patents, either literally or under the doctrine of equivalents, and the Torrent Defendants will actively induce and/or contribute to the infringement of those patents.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to manufacture, offer for sale, or sell the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 80.

81. This action is being brought within forty-five days of Plaintiffs' receipt of Torrent Limited's Notice Letter. Accordingly, Plaintiffs are entitled to a stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii) and 21 U.S.C. § 355(j)(5)(F)(ii) until June 30, 2029, due to RECORLEV®'s New Chemical Entity status.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that this action was brought within forty-five days of the Torrent Defendants sending Torrent Pharmaceuticals Limited's Notice Letter. The Torrent Defendants deny the remaining allegations of paragraph 81.

82. On information and belief, the Torrent Defendants were aware of the Asserted Patents when they filed Torrent's ANDA with a Paragraph IV Certification.

**ANSWER:**

Admitted.

83. Levoketoconazole is the active ingredient in the Torrent ANDA Product and the Torrent ANDA Product is levoketoconazole tablets, oral, 150 mg per tablet.

**ANSWER:**

Admitted.

84. On information and belief, Torrent's ANDA refers to and relies upon the RECORLEV® NDA and contains data that, according to the Torrent Defendants, demonstrates bioequivalence of the Torrent ANDA Product and RECORLEV® (levoketoconazole), *see* 21 U.S.C. § 355(j)(2); 21 C.F.R. § 314.94(a)(7), or the Torrent Defendants have sought a waiver of the requirement to demonstrate bioequivalence of the Torrent ANDA Product and RECORLEV® (levoketoconazole).

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that the Torrent Defendants' ANDA speaks for itself. The Torrent Defendants deny the remaining allegations of paragraph 84.

85. On information and belief, the Torrent Defendants intend to have healthcare providers use the Torrent ANDA Product, if approved, as set forth in the Torrent ANDA Product label. On information and belief, the Torrent ANDA Product label will instruct healthcare providers to prescribe the Torrent ANDA Product in the manner set forth in the label.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, market, offer for sale, and sell the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 85.

**COUNT I — INFRINGEMENT OF THE '393 PATENT BY SOMERSET**

86. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

87. Claim 1 of the '393 Patent recites the following:

A method of treating persistent or recurrent Cushing's syndrome in a subject in need thereof, wherein the subject also has type 2 diabetes mellitus and is being co-administered metformin, or a pharmaceutically acceptable salt thereof, to improve glycemic control, comprising:

administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof, wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme,

during the levoketoconazole titration scheme, monitoring the subject for a dose limiting event wherein the dose limiting event is a decreased fasting glucose level abnormal kidney function, and/or a low Vitamin B-12 level; and

wherein if the subject does not tolerate the increased dose, the dose for the patient is equal to the difference between the further increased dose and the incremental value for the last cycle repetition.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

88. On information and belief, the Somerset ANDA Product is covered by one or more claims of the ’393 Patent, including at least claim 1, because the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling involves treating persistent or recurrent Cushing’s syndrome in adult patients who also have type 2 diabetes mellitus and are being co-administered metformin to improve glycemic control, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event such as a decreased fasting glucose level, abnormal kidney function, and/or a low Vitamin B-12 level during the levoketoconazole titration scheme, and reducing the amount of metformin administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

89. On information and belief, the use of the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing’s syndrome who also have type 2 diabetes mellitus. On information and belief, the Somerset ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Somerset ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods, including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Somerset ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare provider(s) will condition their patients’ participation in the treatment on

the patients' performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control the performance of each and every step of the methods claimed in the '393 Patent, and will therefore directly infringe those patents when they prescribe the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

90. On information and belief, the Somerset Defendants intend to sell the Somerset ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that will infringe at least claim 1 of the '393 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

91. On information and belief, the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling will infringe at least claim 1 of the '393 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

92. On information and belief, the Somerset Defendants submitted as part of Somerset's ANDA a Paragraph IV Certification, asserting that the claims of the '393 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Somerset ANDA Product.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

93. Somerset Therapeutics did not contend or make noninfringement arguments for each claim of the '393 Patent in its Notice Letter that the Somerset ANDA Product, or the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling, would not infringe the claims of the '393 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

94. The purpose of submitting Somerset's ANDA to FDA was to obtain approval under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, ("FDCA") to engage in the commercial manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product prior to the expiration of the '393 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

95. The Somerset Defendants' submission of Somerset's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product prior to the expiration of the '393 Patent was an act of infringement of the '393 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

96. On information and belief, the Somerset Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '393 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

97. On information and belief, the Somerset Defendants have knowledge of the '393 Patent at least because the '393 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Somerset Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset's ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

98. The Somerset Defendants had actual and constructive notice of the '393 Patent prior to submitting Somerset's ANDA, and were aware that the submissions of Somerset's ANDA with the request for FDA approval prior to the expiration of the '393 Patent would constitute an act of infringement of the '393 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

99. On information and belief, the Somerset Defendants plan and intend to, and will, actively induce infringement of the ’393 Patent when Somerset’s ANDA and any amendments thereto are approved by selling the Somerset ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that infringes claims of the ’393 Patent, and will do so with specific intent to induce infringement of the ’393 Patent. Further, on information and belief, the Somerset Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

100. On information and belief, the Somerset Defendants know that the Somerset ANDA Product is especially made or adapted for use in infringing the ’393 Patent, and that the Somerset ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Somerset Defendants plan and intend to, and will, contribute to infringement of the ’393 Patent immediately and imminently upon approval of Somerset’s ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

101. The foregoing actions by the Somerset Defendants constitutes and/or will constitute infringement of the ’393 Patent, active inducement of infringement of the ’393 Patent, and contribution to the infringement of the ’393 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

102. The Somerset Defendants filed Somerset's ANDA without adequate justification for asserting that the '393 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, or sale of the Somerset ANDA Product. The Somerset Defendants' conduct in certifying invalidity and/or noninfringement with respect to the '393 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys' fees and such other relief as this Court deems proper.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

103. Unless the Somerset Defendants are enjoined from infringing the '393 Patent and actively inducing and contributing to infringement of the '393 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Somerset Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**COUNT II — INFRINGEMENT OF THE '547 PATENT BY SOMERSET**

104. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

105. Claim 1 of the '547 Patent recites the following:
A method of treating Cushing's syndrome in a subject in need thereof, wherein the subject also has type 2 diabetes mellitus and is being co-administered metformin, or a pharmaceutically acceptable salt thereof, to improve glycemic control and wherein the subject has had previous surgery or radiation to treat the subject's Cushing syndrome, comprising:
administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof, wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme,
during the levoketoconazole titration scheme, monitoring the subject for a dose limiting event wherein the dose limiting event is a decreased fasting glucose level, abnormal kidney function, and/or a low Vitamin B-12 level;
and if the subject experiences a dose limiting event, reducing the amount of metformin, or a pharmaceutically acceptable salt thereof, administered to the subject.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

106. On information and belief, the Somerset ANDA Product is covered by one or more claims of the '547 Patent, including at least claim 1, because the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling involves treating Cushing's syndrome in adult patients who have had previous surgery or radiation to treat the subject's Cushing syndrome, who also have type 2 diabetes mellitus and are being co-administered metformin to improve glycemic control, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event such as a decreased fasting glucose level, abnormal kidney function,

and/or a low Vitamin B-12 level during the levoketoconazole titration scheme, and reducing the amount of metformin administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

107. On information and belief, the use of the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing's syndrome who also have type 2 diabetes mellitus. On information and belief, the Somerset ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Somerset ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods, including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Somerset ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare provider(s) will condition their patients' participation in the treatment on the patients' performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control the performance of each and every step of the methods claimed in the '547 Patent, and will therefore directly infringe those patents when they prescribe the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

108. On information and belief, the Somerset Defendants intend to sell the Somerset ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that will infringe at least claim 1 of the '547 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

109. On information and belief, the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling will infringe at least claim 1 of the '547 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

110. On information and belief, the Somerset Defendants submitted as part of Somerset's ANDA a Paragraph IV Certification, asserting that the claims of the '547 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Somerset ANDA Product.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

111. Somerset Therapeutics did not contend or make any noninfringement arguments in its Notice Letter that the Somerset ANDA Product, or the use of the Somerset ANDA Product in accordance with and as directed by Somerset ANDA Product proposed labeling would not infringe the claims of the '547 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

112. The purpose of submitting Somerset's ANDA to FDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product prior to the expiration of the '547 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

113. Somerset Therapeutics submission of Somerset's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product prior to the expiration of the '547 Patent was an act of infringement of the '547 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

114. On information and belief, the Somerset Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset's ANDA and any amendments thereto, i.e., prior to the expiration of the '547 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

115. On information and belief, the Somerset Defendants have knowledge of the ’547 Patent at least because the ’547 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Somerset Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset’s ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

116. The Somerset Defendants had actual and constructive notice of the ’547 Patent prior to submitting Somerset’s ANDA, and were aware that the submission of Somerset’s ANDA with the request for FDA approval prior to the expiration of the ’547 Patent would constitute an act of infringement of the ’547 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

117. On information and belief, the Somerset Defendants plan and intend to, and will, actively induce infringement of the ’547 Patent when Somerset’s ANDA and any amendments thereto are approved by selling the Somerset ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that infringes claims of the ’547 Patent, and will do so with specific intent to induce infringement of the ’547 Patent. Further, on information and belief, the Somerset Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

118. On information and belief, the Somerset Defendants know that the Somerset ANDA Product is especially made or adapted for use in infringing the ’547 Patent, and that the Somerset ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Somerset Defendants plan and intend to, and will, contribute to infringement of the ’547 Patent immediately and imminently upon approval of Somerset’s ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

119. The foregoing actions by the Somerset Defendants constitutes and/or will constitute infringement of the ’547 Patent, active inducement of infringement of the ’547 Patent, and contribution to the infringement of the ’547 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

120. The Somerset Defendants filed Somerset’s ANDA without adequate justification for asserting that the ’547 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, or sale of the Somerset ANDA Product. The Somerset Defendants’ conduct in certifying invalidity and/or noninfringement with respect to the ’547 Patent renders this case “exceptional” as that term is set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys’ fees and such other relief as this Court deems proper.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

121. Unless the Somerset Defendants are enjoined from infringing the ’547 Patent and actively inducing and contributing to infringement of the ’547 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Somerset Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**COUNT III — INFRINGEMENT OF THE ’940 PATENT BY SOMERSET**

122. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

123. Claim 1 of the ’940 Patent recites the following:

A method of treating persistent or recurrent Cushing’s syndrome in a subject in need thereof, wherein the subject is being coadministered an organic cation transporter 2 (OCT2) substrate, or a pharmaceutically acceptable salt thereof, comprising:

administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof, wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme,

during the levoketoconazole titration scheme, monitoring the subject for a dose limiting event, wherein the dose limiting event is due to increased exposure to the OCT2 substrate; and

if the subject experiences a dose limiting event, reducing the amount of the OCT2 substrate, or a pharmaceutically acceptable salt thereof, administered to the subject.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

124. On information and belief, the Somerset ANDA Product is covered by one or more claims of the ’940 Patent, including at least claim 1, because the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling involves treating persistent or recurrent Cushing’s syndrome in adult patients who are being co-administered an organic cation transporter 2 (OCT2) substrate, such as metformin, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event due to increased exposure to the OCT2 substrate during the levoketoconazole titration scheme, and reducing the amount of the OCT2 substrate administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

125. On information and belief, the use of the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing’s syndrome who also have type 2 diabetes mellitus. On information and belief, the Somerset ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Somerset ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods, including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Somerset ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare provider(s) will condition their patients’ participation in the treatment on

the patients' performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control the performance of each and every step of the methods claimed in the '940 Patent, and will therefore directly infringe those patents when they prescribe the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

126. On information and belief, the Somerset Defendants intend to sell the Somerset ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that will infringe at least claim 1 of the '940 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

127. On information and belief, the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling will infringe at least claim 1 of the '940 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

128. On information and belief, the Somerset Defendants submitted as part of Somerset's ANDA a Paragraph IV Certification, asserting that the claims of the '940 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Somerset ANDA Product.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

129. Somerset Therapeutics did not contend or make any noninfringement arguments in its Notice Letter that the Somerset ANDA Product, or the use of the Somerset ANDA Product in accordance with and as directed by Somerset ANDA Product proposed labeling would not infringe the claims of the ’940 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

130. The purpose of submitting Somerset’s ANDA to FDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product prior to the expiration of the ’940 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

131. Somerset Therapeutics submission of Somerset’s ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product prior to the expiration of the ’940 Patent was an act of infringement of the ’940 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

132. On information and belief, the Somerset Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset's ANDA and any amendments thereto, i.e., prior to the expiration of the '940 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

133. On information and belief, the Somerset Defendants have knowledge of the '940 Patent at least because the '940 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Somerset Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset's ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

134. The Somerset Defendants had actual and constructive notice of the '940 Patent prior to submitting Somerset's ANDA, and were aware that the submissions of Somerset's ANDA with the request for FDA approval prior to the expiration of the '940 Patent would constitute an act of infringement of the '940 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

135. On information and belief, the Somerset Defendants plan and intend to, and will, actively induce infringement of the '940 Patent when Somerset's ANDA and any

amendments thereto are approved by selling the Somerset ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that infringes claims of the '940 Patent, and will do so with specific intent to induce infringement of the '940 Patent. Further, on information and belief, the Somerset Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

136. On information and belief, the Somerset Defendants know that the Somerset ANDA Product is especially made or adapted for use in infringing the '940 Patent, and that the Somerset ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Somerset Defendants plan and intend to, and will, contribute to infringement of the '940 Patent immediately and imminently upon approval of Somerset's ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

137. The foregoing actions by the Somerset Defendants constitutes and/or will constitute infringement of the '940 Patent, active inducement of infringement of the '940 Patent, and contribution to the infringement of the '940 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

138. The Somerset Defendants filed Somerset's ANDA without adequate justification for asserting that the '940 Patent is invalid, unenforceable, and/or not

infringed by the commercial manufacture, use, offer for sale, or sale of the Somerset ANDA Product. The Somerset Defendants' conduct in certifying invalidity and/or noninfringement with respect to the '940 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys' fees and such other relief as this Court deems proper.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

139. Unless the Somerset Defendants are enjoined from infringing the '940 Patent and actively inducing and contributing to infringement of the '940 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Somerset Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**COUNT IV — INFRINGEMENT OF THE '096 PATENT BY SOMERSET**

140. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

141. Claim 1 of the '096 Patent recites the following:
A method of treating persistent or recurrent Cushing's syndrome in a subject in need thereof, wherein the subject is being coadministered a multidrug and

toxin extrusion transporter 1 (MATE1) substrate, or a pharmaceutically acceptable salt thereof, comprising:
administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof, wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme;
during the levoketoconazole titration scheme, monitoring the subject for a dose limiting event, wherein the dose limiting event is due to increased exposure to the MATE1 substrate; and
if the subject experiences a dose limiting event, reducing the amount of the MATE1 substrate, or a pharmaceutically acceptable salt thereof, administered to the subject.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

142. On information and belief, the Somerset ANDA Product is covered by one or more claims of the ’096 Patent, including at least claim 1, because the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling involves treating persistent or recurrent Cushing’s syndrome in adult patients who are being co-administered a multidrug and toxin extrusion transporter 1 (MATE1) substrate, such as metformin, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event due to increased exposure to the MATE1 substrate during the levoketoconazole titration scheme, and reducing the amount of the MATE1 substrate administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

143. On information and belief, the use of the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing's syndrome who also have type 2 diabetes mellitus. On information and belief, the Somerset ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Somerset ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods, including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Somerset ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare provider(s) will condition their patients' participation in the treatment on the patients' performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control the performance of each and every step of the methods claimed in the '09 Patent, and will therefore directly infringe those patents when they prescribe the Somerset ANDA Product in accordance with the Somerset ANDA Product proposed labeling.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

144. On information and belief, the Somerset Defendants intend to sell the Somerset ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that will infringe at least claim 1 of the '096 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

145. On information and belief, the use of the Somerset ANDA Product in accordance with and as directed by the Somerset ANDA Product proposed labeling will infringe at least claim 1 of the ’096 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

146. On information and belief, the Somerset Defendants submitted as part of Somerset’s ANDA a Paragraph IV Certification, asserting that the claims of the ’096 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Somerset ANDA Product.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

147. Somerset Therapeutics did not contend or make any noninfringement arguments in its Notice Letter that the Somerset ANDA Product, or the use of the Somerset ANDA Product in accordance with and as directed by Somerset ANDA Product proposed labeling would not infringe the claims of the ’096 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

148. The purpose of submitting Somerset’s ANDA to FDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product prior to the expiration of the ’096 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

149. Somerset Therapeutics submission of Somerset's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product prior to the expiration of the '096 Patent was an act of infringement of the '096 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

150. On information and belief, the Somerset Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset's ANDA and any amendments thereto, i.e., prior to the expiration of the '096 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

151. On information and belief, the Somerset Defendants have knowledge of the '096 Patent at least because the '096 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Somerset Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Somerset ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Somerset's ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

152. The Somerset Defendants had actual and constructive notice of the ’096 Patent prior to submitting Somerset’s ANDA, and were aware that the submissions of Somerset’s ANDA with the request for FDA approval prior to the expiration of the ’096 Patent would constitute an act of infringement of the ’096 Patent.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

153. On information and belief, the Somerset Defendants plan and intend to, and will, actively induce infringement of the ’096 Patent when Somerset’s ANDA and any amendments thereto are approved by selling the Somerset ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that infringes claims of the ’096 Patent, and will do so with specific intent to induce infringement of the ’096 Patent. Further, on information and belief, the Somerset Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

154. On information and belief, the Somerset Defendants know that the Somerset ANDA Product is especially made or adapted for use in infringing the ’096 Patent, and that the Somerset ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Somerset Defendants plan and intend to, and will, contribute to infringement of the ’096 Patent immediately and imminently upon approval of Somerset’s ANDA and any amendments thereto.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

155. The foregoing actions by the Somerset Defendants constitutes and/or will constitute infringement of the ’096 Patent, active inducement of infringement of the ’096 Patent, and contribution to the infringement of the ’096 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

156. The Somerset Defendants filed Somerset’s ANDA without adequate justification for asserting that the ’096 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, or sale of the Somerset ANDA Product. The Somerset Defendants’ conduct in certifying invalidity and/or noninfringement with respect to the ’096 Patent renders this case “exceptional” as that term is set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys’ fees and such other relief as this Court deems proper.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

157. Unless the Somerset Defendants are enjoined from infringing the ’096 Patent and actively inducing and contributing to infringement of the ’096 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Somerset Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

The Torrent Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

## COUNT V — INFRINGEMENT OF THE ’393 PATENT BY TORRENT

158. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants restate, reallege, and incorporate their answers to each of the preceding paragraphs as if fully set forth herein.

159. Claim 1 of the ’393 Patent recites the following:

A method of treating persistent or recurrent Cushing’s syndrome in a subject in need thereof, wherein the subject also has type 2 diabetes mellitus and is being co-administered metformin, or a pharmaceutically acceptable salt thereof, to improve glycemic control, comprising:

administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof, wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme,

during the levoketoconazole titration scheme, monitoring the subject for a dose limiting event wherein the dose limiting event is a decreased fasting glucose level abnormal kidney function, and/or a low Vitamin B-12 level; and wherein if the subject does not tolerate the increased dose, the dose for the patient is equal to the difference between the further increased dose and the incremental value for the last cycle repetition.

**ANSWER:**

Denied.

160. On information and belief, the Torrent ANDA Product is covered by one or more claims of the ’393 Patent, including at least claim 1, because the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling involves treating persistent or recurrent Cushing’s syndrome in adult patients who also have type 2 diabetes mellitus and are being co-administered metformin to improve glycemic control, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event such as a decreased fasting glucose level, abnormal kidney function, and/or a low Vitamin B-12 level during the levoketoconazole titration scheme, and reducing the amount of metformin administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

Denied.

161. On information and belief, the use of the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing’s syndrome who also have type 2 diabetes mellitus. On information and belief, the Torrent ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Torrent ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods, including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Torrent ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare provider(s) will condition their patients’ participation in the treatment on the patients’ performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control the performance of each and every step of the methods claimed in the ’393 Patent, and will therefore directly infringe those patents when they prescribe the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling.

**ANSWER:**

Denied.

162. On information and belief, the Torrent Defendants intend to sell the Torrent ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that will infringe at least claim 1 of the '393 Patent.

**ANSWER:**

Denied.

163. On information and belief, the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling will infringe at least claim 1 of the '393 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

Denied.

164. On information and belief, the Torrent Defendants submitted as part of Torrent's ANDA a Paragraph IV Certification, asserting that the claims of the '393 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Torrent ANDA Product.

**ANSWER:**

Admitted.

165. The Torrent Defendants did not contend or make noninfringement arguments for each claim in their Notice Letter that the Torrent ANDA Product, or the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling would not infringe the claims of the '393 Patent.

**ANSWER:**

Denied.

166. The purpose of submitting Torrent's ANDA to FDA was to obtain approval under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, ("FDCA") to engage in the commercial manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product prior to the expiration of the '393 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 166.

167. The Torrent Defendants' submission of Torrent's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product prior to the expiration of the '393 Patent was an act of infringement of the '393 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

Denied.

168. On information and belief, the Torrent Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Torrent's ANDA and any amendments thereto, i.e., prior to the expiration of the '393 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product

throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 168.

169. On information and belief, the Torrent Defendants have knowledge of the ’393 Patent at least because the ’393 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Torrent Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Torrent’s ANDA and any amendments thereto.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that the ’393 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. The Torrent Defendants deny the remaining allegations of paragraph 169.

170. The Torrent Defendants had actual and constructive notice of the ’393 Patent prior to submitting Torrent’s ANDA, and were aware that the submission of Torrent’s ANDA with the request for FDA approval prior to the expiration of the ’393 Patent would constitute an act of infringement of the ’393 Patent.

**ANSWER:**

Denied.

171. On information and belief, the Torrent Defendants plan and intend to, and will, actively induce infringement of the ’393 Patent when Torrent’s ANDA and any amendments thereto are approved by selling the Torrent ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that infringes claims of the ’393 Patent, and will do so with specific intent to induce infringement of the ’393 Patent. Further, on information and belief, the Torrent Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

Denied.

172. On information and belief, the Torrent Defendants know that the Torrent ANDA Product is especially made or adapted for use in infringing the ’393 Patent, and that the Torrent ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Torrent Defendants plan and intend to, and will, contribute to infringement of the ’393 Patent immediately and imminently upon approval of Torrent’s ANDA and any amendments thereto.

**ANSWER:**

Denied.

173. The foregoing actions by the Torrent Defendants constitutes and/or will constitute infringement of the ’393 Patent, active inducement of infringement of the ’393 Patent, and contribution to the infringement of the ’393 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

Denied.

174. The Torrent Defendants filed Torrent’s ANDA without adequate justification for asserting that the ’393 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, or sale of the Torrent ANDA Product. The Torrent Defendants’ conduct in certifying invalidity and/or noninfringement with respect to the ’393 Patent renders this case “exceptional” as that term is set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys’ fees and such other relief as this Court deems proper.

**ANSWER:**

Denied.

175. Unless the Torrent Defendants are enjoined from infringing the ’393 Patent and actively inducing and contributing to infringement of the ’393 Patent, Plaintiffs will

suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Torrent Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

Denied.

**COUNT VI — INFRINGEMENT OF THE '547 PATENT BY TORRENT**

176. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants restate, reallege, and incorporate their answers to each of the preceding paragraphs as if fully set forth herein.

177. Claim 1 of the '547 Patent recites the following:
A method of treating Cushing's syndrome in a subject in need thereof, wherein the subject also has type 2 diabetes mellitus and is being co-administered metformin, or a pharmaceutically acceptable salt thereof, to improve glycemic control and wherein the subject has had previous surgery or radiation to treat the subject's Cushing syndrome, comprising:
administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof, wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme,
during the levoketoconazole titration scheme, monitoring the subject for a dose limiting event wherein the dose limiting event is a decreased fasting glucose level, abnormal kidney function, and/or a low Vitamin B-12 level; and
if the subject experiences a dose limiting event, reducing the amount of metformin, or a pharmaceutically acceptable salt thereof, administered to the subject.

**ANSWER:**

Admitted.

178. On information and belief, the Torrent ANDA Product is covered by one or more claims of the '547 Patent, including at least claim 1, because the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling involves treating Cushing's syndrome in adult patients who have had previous surgery or radiation to treat the subject's Cushing syndrome, who also have type 2 diabetes mellitus and are being co-administered metformin to improve glycemic control, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event such as a decreased fasting glucose level, abnormal kidney function, and/or a low Vitamin B-12 level during the levoketoconazole titration scheme, and reducing the amount of metformin administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

Denied.

179. On information and belief, the use of the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing's syndrome who also have type 2 diabetes mellitus. On information and belief, the Torrent ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Torrent ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods, including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Torrent ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare provider(s) will condition their patients' participation in the treatment on the patients' performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control

the performance of each and every step of the methods claimed in the ’547 Patent, and will therefore directly infringe those patents when they prescribe the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling.

**ANSWER:**

Denied.

180. On information and belief, the Torrent Defendants intend to sell the Torrent ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that will infringe at least claim 1 of the ’547 Patent.

**ANSWER:**

Denied.

181. On information and belief, the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling will infringe at least claim 1 of the ’547 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

Denied.

182. On information and belief, the Torrent Defendants submitted as part of Torrent’s ANDA a Paragraph IV Certification, asserting that the claims of the ’547 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Torrent ANDA Product.

**ANSWER:**

Admitted.

183. The Torrent Defendants did not contend or make noninfringement arguments for each claim in their Notice Letter that the Torrent ANDA Product, or the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling would not infringe the claims of the ’547 Patent.

**ANSWER:**

Denied.

184. The purpose of submitting Torrent's ANDA to FDA was to obtain approval under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, ("FDCA") to engage in the commercial manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product prior to the expiration of the '547 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 184.

185. The Torrent Defendants' submission of Torrent's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product prior to the expiration of the '547 Patent was an act of infringement of the '547 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

Denied.

186. On information and belief, the Torrent Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Torrent's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '547 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 186.

187. On information and belief, the Torrent Defendants have knowledge of the ’547 Patent at least because the ’547 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Torrent Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Torrent’s ANDA and any amendments thereto.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that the ’547 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. The Torrent Defendants deny the remaining allegations of paragraph 187.

188. The Torrent Defendants had actual and constructive notice of the ’547 Patent prior to submitting Torrent’s ANDA, and were aware that the submission of Torrent’s ANDA with the request for FDA approval prior to the expiration of the ’547 Patent would constitute an act of infringement of the ’547 Patent.

**ANSWER:**

Denied.

189. On information and belief, the Torrent Defendants plan and intend to, and will, actively induce infringement of the ’547 Patent when Torrent’s ANDA and any amendments thereto are approved by selling the Torrent ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that infringes claims of the ’547 Patent, and will do so with specific intent to induce infringement of the ’547 Patent. Further, on information and belief, the Torrent Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

Denied.

190. On information and belief, the Torrent Defendants know that the Torrent ANDA Product is especially made or adapted for use in infringing the ’547 Patent, and that the Torrent ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Torrent Defendants plan and intend to, and will, contribute to infringement of the ’547 Patent immediately and imminently upon approval of Torrent’s ANDA and any amendments thereto.

**ANSWER:**

Denied.

191. The foregoing actions by the Torrent Defendants constitutes and/or will constitute infringement of the ’547 Patent, active inducement of infringement of the ’547 Patent, and contribution to the infringement of the ’547 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

Denied.

192. The Torrent Defendants filed Torrent’s ANDA without adequate justification for asserting that the ’547 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, or sale of the Torrent ANDA Product. The Torrent Defendants’ conduct in certifying invalidity and/or noninfringement with respect to the ’547 Patent renders this case “exceptional” as that term is set forth in 35

U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys' fees and such other relief as this Court deems proper.

**ANSWER:**

Denied.

193. Unless the Torrent Defendants are enjoined from infringing the '547 Patent and actively inducing and contributing to infringement of the '547 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Torrent Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

Denied.

**COUNT VII — INFRINGEMENT OF THE '940 PATENT BY TORRENT**

194. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants restate, reallege, and incorporate their answers to each of the preceding paragraphs as if fully set forth herein.

195. Claim 1 of the '940 Patent recites the following:
A method of treating persistent or recurrent Cushing's syndrome in a subject in need thereof, wherein the subject is being coadministered an organic cation transporter 2 (OCT2) substrate, or a pharmaceutically acceptable salt thereof, comprising:
administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof, wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme, during the levoketoconazole titration scheme, monitoring the subject for a dose

limiting event, wherein the dose limiting event is due to increased exposure to the OCT2 substrate; and
if the subject experiences a dose limiting event, reducing the amount of the OCT2 substrate, or a pharmaceutically acceptable salt thereof, administered to the subject.

**ANSWER:**

Admitted.

196. On information and belief, the Torrent ANDA Product is covered by one or more claims of the ’940 Patent, including at least claim 1, because the use of the Torrent ANDA Product in accordance with and as directed by Torrent’s proposed labeling involves treating persistent or recurrent Cushing’s syndrome in adult patients who are being co-administered an organic cation transporter 2 (OCT2) substrate, such as metformin, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event due to increased exposure to the OCT2 substrate during the levoketoconazole titration scheme, and reducing the amount of the OCT2 substrate administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

Denied.

197. On information and belief, the use of the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing’s syndrome who also have type 2 diabetes mellitus. On information and belief, the Torrent ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Torrent ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods, including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Torrent ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare

provider(s) will condition their patients' participation in the treatment on the patients' performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control the performance of each and every step of the methods claimed in the '940 Patent, and will therefore directly infringe those patents when they prescribe the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling.

**ANSWER:**

Denied.

198. On information and belief, the Torrent Defendants intend to sell the Torrent ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that will infringe at least claim 1 of the '940 Patent.

**ANSWER:**

Denied.

199. On information and belief, the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling will infringe at least claim 1 of the '940 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

Denied.

200. On information and belief, the Torrent Defendants submitted as part of Torrent's ANDA a Paragraph IV Certification, asserting that the claims of the '940 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Torrent ANDA Product.

**ANSWER:**

Admitted.

201. The Torrent Defendants did not contend or make noninfringement arguments in their Notice Letter that the Torrent ANDA Product, or the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling would not infringe the claims of the ’940 Patent.

**ANSWER:**

Denied.

202. The purpose of submitting Torrent’s ANDA to FDA was to obtain approval under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, (“FDCA”) to engage in the commercial manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product prior to the expiration of the ’940 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 202.

203. The Torrent Defendants’ submission of Torrent’s ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product prior to the expiration of the ’940 Patent was an act of infringement of the ’940 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

Denied.

204. On information and belief, the Torrent Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of

Torrent's ANDA and any amendments thereto, i.e., prior to the expiration of the '940 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 204.

205. On information and belief, the Torrent Defendants have knowledge of the '940 Patent at least because the '940 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Torrent Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Torrent's ANDA and any amendments thereto.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that the '940 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. The Torrent Defendants deny the remaining allegations of paragraph 205.

206. The Torrent Defendants had actual and constructive notice of the '940 Patent prior to submitting Torrent's ANDA, and were aware that the submission of Torrent's ANDA with the request for FDA approval prior to the expiration of the '940 Patent would constitute an act of infringement of the '940 Patent.

**ANSWER:**

Denied.

207. On information and belief, the Torrent Defendants plan and intend to, and will, actively induce infringement of the ’940 Patent when Torrent’s ANDA and any amendments thereto are approved by selling the Torrent ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that infringes claims of the ’940 Patent, and will do so with specific intent to induce infringement of the ’940 Patent. Further, on information and belief, the Torrent Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

Denied.

208. On information and belief, the Torrent Defendants know that the Torrent ANDA Product is especially made or adapted for use in infringing the ’940 Patent, and that the Torrent ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Torrent Defendants plan and intend to, and will, contribute to infringement of the ’940 Patent immediately and imminently upon approval of Torrent’s ANDA and any amendments thereto.

**ANSWER:**

Denied.

209. The foregoing actions by the Torrent Defendants constitutes and/or will constitute infringement of the ’940 Patent, active inducement of infringement of the ’940 Patent, and contribution to the infringement of the ’940 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

Denied.

210. The Torrent Defendants filed Torrent’s ANDA without adequate justification for asserting that the ’940 Patent is invalid, unenforceable, and/or not infringed by the

commercial manufacture, use, offer for sale, or sale of the Torrent ANDA Product. The Torrent Defendants' conduct in certifying invalidity and/or noninfringement with respect to the '940 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys' fees and such other relief as this Court deems proper.

**ANSWER:**

Denied.

211. Unless the Torrent Defendants are enjoined from infringing the '940 Patent and actively inducing and contributing to infringement of the '940 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Torrent Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

Denied.

**COUNT VIII — INFRINGEMENT OF THE '096 PATENT BY TORRENT**

212. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**

The Torrent Defendants restate, reallege, and incorporate their answers to each of the preceding paragraphs as if fully set forth herein.

213. Claim 1 of the '096 Patent recites the following:
A method of treating persistent or recurrent Cushing's syndrome in a subject in need thereof, wherein the subject is being coadministered a multidrug and toxin extrusion transporter 1 (MATE1) substrate, or a pharmaceutically acceptable salt thereof, comprising:
administering a therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, to the subject in need thereof,

wherein the therapeutically effective amount of levoketoconazole, or a pharmaceutically acceptable salt thereof, is determined via a titration scheme;
during the levoketoconazole titration scheme, monitoring the subject for a dose limiting event, wherein the dose limiting event is due to increased exposure to the MATE1 substrate; and
if the subject experiences a dose limiting event, reducing the amount of the MATE1 substrate, or a pharmaceutically acceptable salt thereof, administered to the subject.

**ANSWER:**

Admitted.

214. On information and belief, the Torrent ANDA Product is covered by one or more claims of the ’096 Patent, including at least claim 1, because the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling involves treating persistent or recurrent Cushing’s syndrome in adult patients who are being co-administered a multidrug and toxin extrusion transporter 1 (MATE1) substrate, such as metformin, by administering a therapeutically effective amount of levoketoconazole determined via a titration scheme, monitoring the subject for a dose limiting event due to increased exposure to the MATE1 substrate during the levoketoconazole titration scheme, and reducing the amount of the MATE1 substrate administered to the subject if the subject experiences a dose limiting event.

**ANSWER:**

Denied.

215. On information and belief, the use of the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling involves the co-administration of metformin to patients with Cushing’s syndrome who also have type 2 diabetes mellitus. On information and belief, the Torrent ANDA Product proposed labeling instructs healthcare provider(s) to monitor patients who are co-administered metformin or other OCT2 and/or MATE1 substrates for dose-limiting adverse events and to adjust the metformin dosage accordingly. On information and belief, when healthcare provider(s) prescribe the Torrent ANDA Product to such patients, those healthcare provider(s) will direct or control the performance of each step of the claimed methods,

including the administration of levoketoconazole, the monitoring for dose-limiting events, and the reduction of metformin dosage. Patients who take the Torrent ANDA Product will do so under the direction and control of their prescribing healthcare provider(s), who will establish the treatment regimen, monitor for adverse events, and adjust co-administered medications as necessary. The prescribing healthcare provider(s) will condition their patients' participation in the treatment on the patients' performance of each required step, and the healthcare providers will establish the manner and timing of such performance. Accordingly, the prescribing healthcare provider(s) will perform or direct and control the performance of each and every step of the methods claimed in the '096 Patent, and will therefore directly infringe those patents when they prescribe the Torrent ANDA Product in accordance with the Torrent ANDA Product proposed labeling.

**ANSWER:**

Denied.

216. On information and belief, the Torrent Defendants intend to sell the Torrent ANDA Product with a label that includes instructions to administer levoketoconazole to treat Cushing's syndrome patients in a manner that will infringe at least claim 1 of the '096 Patent.

**ANSWER:**

Denied.

217. On information and belief, the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling will infringe at least claim 1 of the '096 Patent, either literally or under the doctrine of equivalents.

**ANSWER:**

Denied.

218. On information and belief, the Torrent Defendants submitted as part of Torrent's ANDA a Paragraph IV Certification, asserting that the claims of the '096 Patent are invalid, unenforceable, and/or not infringed by the manufacture, use, offer for sale, or sale of the Torrent ANDA Product.

**ANSWER:**

Admitted.

219. The Torrent Defendants did not contend or make noninfringement arguments for each claim in their Notice Letter that the Torrent ANDA Product, or the use of the Torrent ANDA Product in accordance with and as directed by the Torrent ANDA Product proposed labeling would not infringe the claims of the ’096 Patent.

**ANSWER:**

Denied.

220. The purpose of submitting Torrent’s ANDA to FDA was to obtain approval under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, (“FDCA”) to engage in the commercial manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product prior to the expiration of the ’096 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 220.

221. The Torrent Defendants’ submission of Torrent’s ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product prior to the expiration of the ’096 Patent was an act of infringement of the ’096 Patent under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**

Denied.

222. On information and belief, the Torrent Defendants intend to engage in the commercial manufacture, use, sale and/or offer for sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Torrent's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '096 Patent.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that they intend to commercially manufacture, use, offer for sale, and/or sale the Torrent ANDA Product throughout the United States, in the event FDA approves ANDA No. 220357. The Torrent Defendants deny the remaining allegations of paragraph 222.

223. On information and belief, the Torrent Defendants have knowledge of the '096 Patent at least because the '096 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. Notwithstanding this knowledge, the Torrent Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, and/or sale of the Torrent ANDA Product and the proposed labeling therefor immediately and imminently upon the approval of Torrent's ANDA and any amendments thereto.

**ANSWER:**

This paragraph contains legal conclusions to which no response is required. To the extent an answer is required, the Torrent Defendants admit that the '096 Patent is listed in the Orange Book for RECORLEV® (levoketoconazole) drug product. The Torrent Defendants deny the remaining allegations of paragraph 223.

224. The Torrent Defendants had actual and constructive notice of the '096 Patent prior to submitting Torrent's ANDA, and were aware that the submission of Torrent's

ANDA with the request for FDA approval prior to the expiration of the ’096 Patent would constitute an act of infringement of the ’096 Patent.

**ANSWER:**

Denied.

225. On information and belief, the Torrent Defendants plan and intend to, and will, actively induce infringement of the ’096 Patent when Torrent’s ANDA and any amendments thereto are approved by selling the Torrent ANDA Product with a label that provides instructions to administer levoketoconazole to treat Cushing’s syndrome patients in a manner that infringes claims of the ’096 Patent, and will do so with specific intent to induce infringement of the ’096 Patent. Further, on information and belief, the Torrent Defendants plan and intend to, and will, do so immediately and imminently upon approval.

**ANSWER:**

Denied.

226. On information and belief, the Torrent Defendants know that the Torrent ANDA Product is especially made or adapted for use in infringing the ’096 Patent, and that the Torrent ANDA Product is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, the Torrent Defendants plan and intend to, and will, contribute to infringement of the ’096 Patent immediately and imminently upon approval of Torrent’s ANDA and any amendments thereto.

**ANSWER:**

Denied.

227. The foregoing actions by the Torrent Defendants constitutes and/or will constitute infringement of the ’096 Patent, active inducement of infringement of the ’096 Patent, and contribution to the infringement of the ’096 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §§ 271(b) and (c).

**ANSWER:**

Denied.

228. The Torrent Defendants filed Torrent's ANDA without adequate justification for asserting that the '096 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, or sale of the Torrent ANDA Product. The Torrent Defendants' conduct in certifying invalidity and/or noninfringement with respect to the '096 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of its attorneys' fees and such other relief as this Court deems proper.

**ANSWER:**

Denied.

229. Unless the Torrent Defendants are enjoined from infringing the '096 Patent and actively inducing and contributing to infringement of the '096 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and the Torrent Defendants, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**ANSWER:**

Denied.

## ADDITIONAL AND OTHER DEFENSES

Without prejudice to the denials set forth in this Answer, without admitting any averments of Plaintiffs' Complaint not otherwise admitted, and without undertaking any of the burdens imposed by law on Plaintiffs, the Torrent Defendants aver and assert the following Additional Defenses to the Complaint. The Torrent Defendants expressly reserve the right to allege additional defenses as they become known through the course of discovery.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Torrent Defendants have not, do not, and will not infringe, literally or under to doctrine of equivalents, willfully or otherwise, any valid enforceable, and properly construed claim of the ’393 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner. The manufacture, use, offer for sale, sale, and/or importation of the Torrent Defendants’ ANDA Product has not, does not, and will not infringe, literally or under the doctrine of equivalents, willfully or otherwise, any valid, enforceable, and properly construed claim of the ’393 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner.

## THIRD AFFIRMATIVE DEFENSE

The Torrent Defendants have not, do not, and will not infringe, literally or under to doctrine of equivalents, willfully or otherwise, any valid enforceable, and properly construed claim of the ’547 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner. The manufacture, use, offer for sale, sale, and/or importation of the Torrent Defendants’ ANDA Product has not, does not, and will not infringe, literally or under the doctrine of equivalents, willfully or otherwise, any valid, enforceable, and properly construed claim of the ’547 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner.

## FOURTH AFFIRMATIVE DEFENSE

The Torrent Defendants have not, do not, and will not infringe, literally or under to doctrine of equivalents, willfully or otherwise, any valid enforceable, and properly construed claim of the ’940 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner. The manufacture, use, offer for sale, sale, and/or importation of the Torrent Defendants’ ANDA Product has not, does not, and will not infringe, literally or under the doctrine of equivalents, willfully or otherwise, any valid, enforceable, and properly construed claim of the ’940 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner.

## FIFTH AFFIRMATIVE DEFENSE

The Torrent Defendants have not, do not, and will not infringe, literally or under to doctrine of equivalents, willfully or otherwise, any valid enforceable, and properly construed claim of the ’096 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner. The manufacture, use, offer for sale, sale, and/or importation of the Torrent Defendants’ ANDA Product has not, does not, and will not infringe, literally or under the doctrine of equivalents, willfully or otherwise, any valid, enforceable, and properly construed claim of the ’096 Patent, either directly, indirectly, contributorily, by inducement, or in any other manner.

## SIXTH AFFIRMATIVE DEFENSE

Each claim of the ’393 Patent is invalid for failing to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code §§ 101, et seq., including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or other judicially created bases for invalidation.

## SEVENTH AFFIRMATIVE DEFENSE

Each claim of the ’547 Patent is invalid for failing to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code §§ 101, et seq., including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or other judicially created bases for invalidation.

## EIGHTH AFFIRMATIVE DEFENSE

Each claim of the ’940 Patent is invalid for failing to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code §§ 101, et seq., including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or other judicially created bases for invalidation.

## NINTH AFFIRMATIVE DEFENSE

Each claim of the ’096 Patent is invalid for failing to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code §§ 101, et seq., including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or other judicially created bases for invalidation.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to injunctive relief because any injury to Plaintiffs is not immediate or irreparable, because any such injunction would be against the public interest, and because Plaintiffs have an adequate remedy at law.

**ELEVENTH AFFIRMATIVE DEFENSE**

The Torrent Defendants have not intentionally, willfully, or deliberately infringed any valid claim of the ’393 Patent.

**TWELFTH AFFIRMATIVE DEFENSE**

The Torrent Defendants have not intentionally, willfully, or deliberately infringed any valid claim of the ’547 Patent.

**THIRTEENTH AFFIRMATIVE DEFENSE**

The Torrent Defendants have not intentionally, willfully, or deliberately infringed any valid claim of the ’940 Patent.

**FOURTEENTH AFFIRMATIVE DEFENSE**

The Torrent Defendants have not intentionally, willfully, or deliberately infringed any valid claim of the ’096 Patent.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs’ case is not exceptional under 35 U.S.C. § 285.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' infringement claims against the Torrent Defendants regarding the '393 Patent are barred and the '393 Patent is unenforceable against the Torrent Defendants under the equitable doctrines of laches, waiver, estoppel, and/or acquiescence.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' infringement claims against the Torrent Defendants regarding the '547 Patent are barred and the '547 Patent is unenforceable against the Torrent Defendants under the equitable doctrines of laches, waiver, estoppel, and/or acquiescence.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' infringement claims against the Torrent Defendants regarding the '940 Patent are barred and the '940 Patent is unenforceable against the Torrent Defendants under the equitable doctrines of laches, waiver, estoppel, and/or acquiescence.

**NINETEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' infringement claims against the Torrent Defendants regarding the '096 Patent are barred and the '096 Patent is unenforceable against the Torrent Defendants under the equitable doctrines of laches, waiver, estoppel, and/or acquiescence.

## RESERVATION OF DEFENSES

The Torrent Defendants reserve the right to assert additional defenses as may be warranted by discovery or further factual investigation in this action.

## TORRENT DEFENDANTS' REQUEST FOR RELIEF

WHEREFORE, the Torrent Defendants respectfully request the following relief:

(a) Dismissing the Complaint with prejudice;

(b) Denying Plaintiffs the relief requested in the Complaint and any relief whatsoever;

(c) Awarding the Torrent Defendants their reasonable attorneys' fees under 35 U.S.C. § 285;

(d) Awarding the Torrent Defendants their costs; and

(e) Awarding the Torrent Defendants such other and further relief as the Court deems just and equitable.

Date: April 27, 2026

By: /s/ *Andrew Miller*
Andrew Miller
Stuart D. Sender
WINDELS MARX LANE & MITTENDORF, LLP
180 Park Avenue
Florham Park, NJ 07932-1054
amiller@windelsmarx.com
ssender@windelsmarx.com

Audrey Sparschu (*pro hac vice* application to be filed)
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
22nd Floor
New York, NY 10019
asparschu@windelsmarx.com

*Attorneys for Defendants Torrent Pharma Inc. and Torrent Pharmaceuticals Limited*